IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **JAMES SIMMERS,**<br>　　　　　　**Plaintiff,**<br><br>　　　　v.<br><br>**JAMES ELO; MIKE KELLY; TIMOTHY DEERY; JOSE COLLAZO; JAMES W. AVERY; JOSEPH RALSTON; ANDREW KELLY; NEHEMIAH HAIGLER; JOHN BRENNAN; AVRIL EKLUND; TIMOTHY RILEY; and JOHN AND JANE DOES 1-25,**<br>　　　　　　**Defendants.** | **CIVIL ACTION**<br><br><br><br>**NO.  14-6609** |

　　　　Plaintiff James Simmers, whose ownership of a salvage yard and his enthusiasm for motorcycles is peculiarly relevant here, brings this civil rights action against eleven agents of the Pennsylvania Office of Attorney General's Bureau of Narcotics Investigation based upon his arrest for narcotics offenses in November 2012.  The arrest followed a lengthy investigation into a methamphetamine ring culminating in a grand jury which took extensive testimony and evidence before recommending that charges be brought against Plaintiff and twenty-six other people.  Just over a year after the arrests, after every one of those charged – except Plaintiff – had pled guilty, the prosecutor dropped the case against him.  The nub of Plaintiff's complaint is that he was caught up in the investigation when agents who had tapped the telephone of a suspect concluded that a conversation Plaintiff had with the suspect about supplying motorcycle parts was in fact a coded discussion about drugs.  The Defendants have filed a motion for summary judgment on all of Plaintiff's remaining claims.

**PROCEDURAL POSTURE**

　　　　Plaintiff's complaint, brought under the rubric of 42 U.S.C. § 1983, sought damages and injunctive relief for unlawful arrest (Count I), unjustified search (Count III), and malicious

prosecution (Count V), as well as state law claims for false imprisonment (Count II) and intentional infliction of emotional distress (Count IV). The Court dismissed the state law claims on Plaintiff's concession in his motion to dismiss that those claims were barred by the doctrine of sovereign immunity. Now, in the context of Defendants' Motion for Summary Judgment, Plaintiff contests only the dismissal of his claim for unlawful arrest against Defendants James Elo, Timothy Deery and Jose Collazo.

## SUMMARY JUDGMENT STANDARD

In ruling on a summary judgment motion, a court must "view the facts and draw reasonable inferences 'in the light most favorable to the party opposing the [summary judgment].'" *Scott v. Harris*, 550 U.S. 372, 378 (2007) (alteration in original) (quoting *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962)). "[S]ummary judgment is appropriate where there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law." *Alabama v. North Carolina*, 560 U.S. 330, 344 (2010) (citations and internal quotation marks omitted). "A genuine issue is present when a reasonable trier of fact, viewing all of the record evidence, could rationally find in favor of the non-moving party in light of his burden of proof." *Doe v. Abington Friends Sch.*, 480 F.3d 252, 256 (3d Cir. 2007) (citations omitted). "The non-moving party may not merely deny the allegations in the moving party's pleadings; instead he must show where in the record there exists a genuine dispute over a material fact." *Id*. 480 F.3d at 256 (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-26 (1986)).

## FACTS

For the most part the facts at issue here are undisputed. In 2010 the Pennsylvania Office of Attorney General Bureau of Narcotics Investigation began an investigation into a

methamphetamine distribution ring, which culminated in charges against Plaintiff and twenty-six other individuals in November 2012. Joint Appendix ("JA") 37-38 (Elo Dep. at 5:16-7:12); JA 111 (Rongaus Decl. ¶¶ 25-26). James Elo was the lead agent on the investigation working with Agents Timothy Deery and Jose Collazo. JA 109 (Rongaus Decl. ¶ 6). Agent Elo has ten years of narcotics investigations work under his belt and, in the course of his duties, has personally made undercover purchases of methamphetamine and other drugs, arranged hundreds of others using confidential informants, and listened to hundreds or possibly thousands of wiretapped conversations. JA 37-43 (Elo Dep. at 5:10-15, 7:7:23-25, 13:18-24, 26:2-16).

In this case, the investigation involved controlled buys by both undercover law enforcement officers as well as a confidential informant, physical surveillance and, eventually, court-authorized interceptions of phone calls made on phones associated with members of the drug ring. JA 37-39 (Elo Dep. at 6:1-15:21); JA 74 (Deery Dep. at 33:7-15). One of the phones tapped belonged to a Francis Gulich. JA 39 (Elo Dep. at 11:12-19). Based upon the progress of the investigation up to that point, Agent Elo had determined that Gulich was a large scale methamphetamine dealer with another man, Sim Bradley, acting as his supplier. JA 40, 41, 46-47 (Elo Dep. 15:10-18, 21:9-15, 41:25-42:7). During the time period in which his phone calls were being intercepted, Gulich owned a garage at which he serviced motorcycles. JA 72 (Deery Dep. at 22:20-23:16, 24:9-19), JA 42 (Elo Dep. at 24:25-25:5).

In monitoring Gulich's phone, the agents noticed that Gulich made several calls to Plaintiff. In light of their experience that drug dealers, for fear of wire taps, frequently use coded language in their phone communications, the agents' suspicions were aroused when, during several of those calls, Plaintiff asked Gulich for "a part." JA 39 (Elo Dep. at 12:17-13:17; 13:18-24); JA 72-73, 75-76 (Deery Dep. at 25:7-28:12;37:24-38:18); JA 96 (Collazo Dep. at 14:6-18).

3

In one call when Plaintiff asked Gulich for a part, Gulich said he had it in his pocket.  JA 40 (Elo Dep. at 16:3-4).  In another, when Plaintiff asked Gulich for a part, Gulich told him he should hurry because they were going quick.  JA 40 (Elo Dep. at 16:5-8).  In yet another call, Plaintiff told Gulich that someone is "being a pain in the balls" at which point Gulich told Plaintiff he went to see Sim Bradley ("Mr. B") and that he should tell his "buddy it will be worth the wait."  JA 41 (Elo Dep. at 19:10- 17).  Agent Elo testified that he understood this to mean that Plaintiff's customer was complaining about the quality of the methamphetamine and that Gulich was assuring Plaintiff the next batch would be better.  JA 148 (Grand Jury ("GJ") Presentment at 340); JA 41 (Elo Dep. at 19:22-20:3).  Plaintiff also told Gulich during one of the calls that he had some "paper" for him, a word that Elo testified is commonly used by drug dealers and their customers to refer to money.  JA 39 (Elo Dep. at 13:5-17); JA 95 (Collazo Dep. at 12:5-6).  Defendants did not believe that every single phone conversation between Gulich and Plaintiff was about drugs – some of them, they accept, were about motorcycles.  JA 72 (Deery Dep. at 25:21-24), JA 42 (Elo Dep. at 24:18-24).  For his part, Plaintiff does not dispute that the calls took place, but he denies that any of the conversations concerned drugs and points out that the only words used by Plaintiff of which Defendants were suspicious were the words "part" and "paper."  JA 39-40 (Elo Dep. at 13:25-14:8).

In March 2011, an investigating grand jury was empaneled and, between March 2011 and October 2012, was presented with testimony and evidence regarding the investigation.  Members of the grand jury were also permitted to ask witnesses questions.  JA 109 (Rongaus Decl. ¶¶ 7, 8, 10).  The only person to testify specifically about Plaintiff during this process was Agent Elo.  JA 109 (Rongaus Decl. ¶ 12); JA 142-43 (GJ Presentment at 33-34).

On October 17, 2012, the grand jury issued a presentment which recommended charges against twenty-six people, including Plaintiff. JA 153-60 (GJ Presentment at 39-46). The recommended charges against Plaintiff were: (1) Violations of the Controlled Substance, Drug, Device and Cosmetic Act; (2) Criminal Conspiracy to commit violations of the Controlled Substance, Drug, Device and Cosmetic Act; (3) Corrupt Organizations; and, (4) Criminal Use of a Communication Facility. JA 159-60 (GJ Presentment at 45-46). On October 23, 2012, the grand jury's supervising judge issued an order accepting the presentment and authorized the prosecution of the charges as set forth in the presentment. JA 113 (Order Accepting Presentment No. 55). Elo then drafted a criminal complaint and arrest warrant for Plaintiff listing the offenses in the grand jury presentment. JA 163-65 (Criminal Complaint and Arrest Warrant); JA 110 (Rongaus Decl. ¶ 22). Included was an affidavit of probable cause which incorporated the attached grand jury presentment. JA 166-67 (Criminal Complaint and Arrest Warrant); JA 110 (Rongaus Decl. ¶ 22). Agent Collazo also signed off on the criminal complaint and affidavit. JA 166-67 (Complaint and Arrest Warrant); JA 97 (Collazo Dep. at 18:6-23). On November 26, 2012, a magisterial district court judge signed the criminal complaint and warrant for Plaintiff's arrest. JA 162 (Criminal Complaint and Arrest Warrant); JA 111 (Rongaus Decl. ¶ 22).

Early the next morning, Plaintiff was arrested at his home in Levittown, Pennsylvania, pursuant to the warrant and was taken to the Bristol Township Police Department where bail was set. JA 3, 4, 14, 15 (Pl. Dep. at 9:8-14; 13:2-4; 53:25-54:4-11). He was jailed and remained incarcerated until he posted bail on or about December 5, 2012. JA 15 (Pl. Dep. at 55:22-25). Plaintiff thereafter waived his preliminary hearing. JA 15 (Pl. Dep. at 56:13-19). In December 2013, prosecutors dropped the charges against him. JA 169 (Dugan Decl.¶ 10).

**ANALYSIS**

Plaintiff's claims arise from his contention that his rights under the Fourth Amendment of the United States, which protects individuals from unreasonable searches and seizures, were violated when he was arrested. Pl. Opp'n at 5-6; U.S. Const. amend IV. The proper inquiry in a Section 1983 case based on a claim of false arrest is not whether the person arrested did in fact commit the crime, but rather, "whether the arresting officers had probable cause to believe the person arrested had committed the offense." *Dowling v. City of Philadelphia*, 855 F.2d 136, 141 (3d Cir. 1988). Generally, the question of probable cause in a Section 1983 case is one for the jury. *Merkle v. Upper Dublin Sch. Dist.*, 211 F.3d 782, 788 (3d Cir. 2000). On a summary judgment motion, however, a court may conclude "that probable cause exists as a matter of law if the evidence, viewed most favorably to Plaintiff, reasonably would not support a contrary factual finding. . . ." *Id.* 788-79 (citing *Sherwood v. Mulvihill,* 113 F.3d 396, 401 (3d Cir. 1997)).

In evaluating the record, the Court must take a "common sense" approach, looking to the totality of the circumstances and asking whether the facts and circumstances known to the officer at the time of the arrest are sufficient in themselves to warrant a reasonable person to believe that an offense had been committed. *Cosby v. Magnotta,* Civ. A. No. 1881, 2014 WL 694998 (M.D. Pa. Feb. 24, 2014) (citing *United States v. Cruz*, 910 F.2d 1072, 1076 (3d Cir. 1990)). Thus, it is the function of this Court to determine whether the objective facts available to Defendants at the time of Plaintiff's arrest were sufficient to justify a reasonable belief that he committed the crimes for which he was charged.

Looking at the totality of the circumstances here, Plaintiff was charged after agents had conducted an extensive investigation, after a grand jury heard testimony and took evidence over

an eighteen month period, after the grand jury had issued a presentment, and after the supervising judge of the grand jury had authorized the prosecution of the charges.  He was arrested pursuant to a warrant that had been approved by a magisterial district court judge who had been provided by Defendant Elo and Collazo with an affidavit of probable cause which incorporated the attached grand jury presentment.

A grand jury presentment concerning the crimes for which Plaintiff was arrested "constitutes prima facie evidence of probable cause" that may be rebutted "by evidence that the presentment was procured by fraud, perjury or other corrupt means."  *Rose v. Bartle*, 871 F.2d 331, 353 (3d Cir. 1989).  Plaintiff does not point to any evidence in the record that the Defendants engaged in fraudulent or corrupt conduct or committed perjury.  Absent such evidence – along the lines of who lied, what they lied about, what portions of the presentment were falsified, who committed fraud and how – the presumption of probable cause that arises from a grand jury's presentment remains.  *Id*. at 354.

Plaintiff's complaint lies in the manner in which the investigation was conducted and in which the evidence was presented to the grand jury.  He argues that the only evidence against him presented to the grand jury was Elo's assumption that Plaintiff's choice of language was code for drug distribution, and that the grand jury relied on the Defendants' investigation and conclusions while Defendants failed to consider other evidence at their disposal.  For example, that Plaintiff owned a salvage shop, that he frequently worked on and rode motorcycles, and that he had no prior criminal record.  Pl. Opp'n at 10-11.  The focus of the probable cause inquiry, however, is not whether the officers conducted the investigation negligently, or whether the information on which the agents based their request for an arrest warrant "resulted from a professionally executed investigation," or whether the information "resulted from exemplary

police work;" the issue is whether it was objectively reasonable for the agents to conclude that they had sufficient information to believe that Plaintiff had committed the crimes for which he was arrested. *Orsatti v. New Jersey State Police*, 71 F.3d 480, 484 (3d Cir. 1995). Given the grand jury presentment, and absent any evidence of fraud, corruption or perjury, I find that the Defendants had probable cause to arrest Plaintiff for the charges made against him.[1] Accordingly, Defendant's motion for summary judgment shall be granted.

    An appropriate order follows.

**BY THE COURT:**

**/S/WENDY BEETLESTONE, J.**

_____

**WENDY BEETLESTONE, J.**

---

[1] The conclusion is not altered, despite Plaintiff's arguments to the contrary, by *Malley v. Briggs,* a case in which the Supreme Court addressed, in the context of a discussion on qualified immunity, a fact pattern in which officers obtained approval of a warrant from a magistrate judge based on affidavits describing two wire tapped phone calls during which code words for drugs or drug use were used by the plaintiffs. 475 U.S. 335, 338 (1986). The Court found that the fact that a magistrate judge had approved the warrant did not insulate the officers from liability: "Only where the warrant application is so lacking in indicia of probable cause as to render official belief in its existence unreasonable . . . will the shield of immunity be lost." *Id.* at 344–45. Both plaintiffs were arrested pursuant to the warrant issued by the magistrate but the charges against them were dropped when the grand jury to which the case was presented did not return an indictment. *Malley* did not address the rule that, absent fraud, perjury or corrupt conduct, a grand jury presentment constitutes prima facie evidence of probable case and the Third Circuit, deciding *Rose v. Bartle* three years later, did not suggest that *Malley* had undermined that rule.